UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL NURSES UNITED, et al.,

　　　　　Plaintiffs,

　　v.

ROBERT F. KENNEDY, JR., Secretary of
Health and Human Services, et al.,

　　　　　Defendants.

Civil Action No. 25-1538 (TNM)

**REPLY IN FURTHER SUPPORT OF
<u>DEFENDANTS' MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

Table of Contents ........................................................................................................... i

Table of Authorities ...................................................................................................... ii

Introduction ................................................................................................................... 1

Argument ....................................................................................................................... 2

    I.    Plaintiffs Lack Standing ..................................................................................... 2

        A.    Union Plaintiffs and AOEC Fail to Allege Informational Standing. .......... 2

        B.    Plaintiff AOEC Fails to Allege Organizational or Associational Standing
            to Challenge the Termination of Any Grantmaking Functions. ................. 4

        C.    Plaintiffs Dentec and Local 983 Fail to Allege Standing. ......................... 6

        D.    The Court Should Decline to Find Standing to Allow Plaintiffs to
            Micromanage Federal Personnel Policies. ................................................... 7

    II.    The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims Arising from
        Federal Employment. ......................................................................................... 8

    III.    The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Challenge to the
        Termination or Non-Continuation of the Institute's Grants. ............................... 11

    IV.    Plaintiffs Cannot Bring a Claim under the Impoundment Control Act. .............. 12

    V.    Plaintiffs Fail to Sufficiently Allege Claims Under the APA. ............................. 12

        A.    Plaintiffs Do Not Seek Judicial Review of a Discrete Agency Action. ..... 12

        B.    Plaintiffs Do Not Identify a Final Agency Action. ................................... 15

        C.    There Are Adequate Alternative Remedies Available. .............................. 17

        D.    The Department's Staffing and Other Programmatic Implementation
            Decisions Are Committed to Agency Discretion. ...................................... 18

        E.    Plaintiffs Fail to Allege that the RIFs and Restructuring are Contrary to
            Law and Exceed Defendants' Statutory Authority. ................................... 19

Conclusion ................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Chemistry Council v. Dep't of Transp.*,
    468 F.3d 810 (D.C. Cir. 2006) ................................................................... 6

*Am. Foreign Serv. Ass'n v. Trump*,
    768 F. Supp. 3d, 10- (D.D.C. 2025) .................................................... 10, 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................... 15, 18

\* *Association for Education Finance & Policy ("AEFP")* v. McMahon,
    --- F. Supp. 3d ---, 2025 WL 1568301 (D.D.C. June 3, 2025) ............... 1, 2, 13, 14, 15, 17, 19

*Block v. Cmty. Nutrition Inst.*,
    467 U.S. 340 (1984) ............................................................................. 9

*Center for Biological Diversity v. Bernhardt*,
    480 F. Supp. 3d 69 (D.D.C. 2020) ......................................................... 6

*Chamber of Com. of U.S. v. EPA*,
    642 F.3d 192 (D.C. Cir. 2011) ............................................................... 6

*Cohen v. Bd. of Trs. of Univ. of D.C.*,
    311 F. Supp. 3d 242 (D.D.C. 2018) ...................................................... 9

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ............................................................................. 7

*Dep't of Educ. v. California*,
    145 S. Ct. 966 (2025) ......................................................................... 11

*Env't Working Grp. v. United States Food & Drug Admin.*,
    301 F. Supp. 3d 165 (D.D.C. 2018) ...................................................... 5

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015) ............................................................... 5

*Fornaro v. James*,
    416 F.3d 63 .......................................................................................... 10

*Gill v. Whitford*,
    585 U.S. 48 (2018) ............................................................................... 8

*Grosdidier v. Chairman, Broad. Bd. of Governors,*
    560 F.3d 495 (D.C. Cir. 2009) ............................................................................. 10

*Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity,*
    878 F.3d 371 (D.C. Cir. 2017) ................................................................................. 5

*Ingersoll-Rand Co. v. United States,*
    780 F.2d 74 (D.C. Cir. 1985) ................................................................................. 17

*Lujan v. Nat'l Wildlife Fed.,*
    497 U.S. 871 (1990) ................................................................................................ 4

*Markland v. OPM,*
    140 F.3d 1031 (Fed. Cir. 1998) ............................................................................ 19

*Markowicz v. Johnson,*
    206 F. Supp. 3d 158 (D.D.C. 2016) ..................................................................... 15

*MISO Transmission Customers v. FERC,*
    45 F.4th 1004 (D.C. Cir. 2022) .......................................................................... 4, 5

\* *Nat'l Treasury Emps. Union v. Vought ("NTEU"),*
    149 F.4th 762 (D.C. Cir. 2025) .................................... 1, 8, 9, 10, 11, 13, 14, 15, 17

*New York v. Kennedy,*
    — F. Supp. 3d —, 2025 WL 1803260 (D.R.I. July 1, 2025) .................................. 8

*Norton v. S. Utah Wilderness All.,*
    542 U.S. 55 (2004) .................................................................................................. 4

*Nyunt v. Chairman, Broad. Bd. Of,*
    Govs., 589 F.3d 445 (D.C. Cir. 2009) .................................................................. 10

*Palisades Gen. Hosp. Inc. v. Leavitt,*
    426 F.3d 400 (D.C. Cir. 2005) .............................................................................. 19

*Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Human Servs.,*
    43 F. Supp. 3d 28 (D.D.C. 2014) ......................................................................... 15

*PPG Indus., Inc. v. United States,*
    52 F.3d 363 (D.C. Cir. 1995) ................................................................................ 19

*Singh v. District of Columbia,*
    55 F. Supp. 3d 55 (D.D.C. 2014) ...................................................................... 9, 12

*Trudeau v. FTC,*
    456 F.3d 178 (D.C. Cir. 2006) ................................................................................ 2

*United States v. Texas*,
    599 U.S. 670 (2023).................................................................................................................. 7

*Wannall v. Honeywell, Inc.*,
    775 F.3d 425 (D.C. Cir. 2014) ................................................................................................. 6

**Other Authorities**

Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 11,2025) .......................................... 2, 7, 16, 18

Defendants Robert F. Kennedy, Jr., Secretary of Health and Human Services (the "Secretary") and the Department of Health and Human Services (the "Department") respectfully file this reply in further support of their motion to dismiss the Amended Complaint ("Motion," or "Mot.," ECF No. 31) under Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6).

## INTRODUCTION

"[T]he APA does not make federal courts 'roving commissions' assigned to pass on how well federal agencies are satisfying their statutory obligations." *Nat'l Treasury Emps. Union ("NTEU") v. Vought*, 149 F.4th 762, 780-81 (D.C. Cir. 2025). Yet, Plaintiffs bring this suit to ask this Court to do exactly that. In bringing this Administrative Procedure Act ("APA") case, Plaintiffs request that this Court pass judgment on the Department's ability to satisfy their statutory obligations based on their ongoing restructuring and reorganization plans for the National Institute for Occupational Safety and Health ("NIOSH" or the "Institute").

The Court should dismiss Plaintiffs' Amended Complaint in full. Plaintiffs fail to demonstrate any non-speculative harms to establish standing. And any claims challenging federal employment actions or impending termination of grant funding do not belong in this Court.

But critically, Plaintiffs do not identify any final, discrete agency action for this Court's review. Their Amended Complaint merely "bund[es] together a collection of discrete actions, present[s] them as facets of a single event, and then challeng[es] that event instead of the individual actions," which is not reviewable agency action under the APA. *See Association for Education Finance & Policy ("AEFP") v. McMahon*, --- F. Supp. 3d ---, 2025 WL 1568301, at *5 (D.D.C. June 3, 2025). At best, Plaintiffs' allegations illustrate a delayed provision of services and funding, not any final decision. Moreover, any choices about how to reorganize the Department to ultimately best deliver those services remain within the discretion of the Executive, and Plaintiffs fail to demonstrate that the actions are contrary to law.

## ARGUMENT

I.    <u>**Plaintiffs Lack Standing.**</u>

Because Plaintiffs fail to allege informational standing, organizational standing, or associational standing, the Court should dismiss Plaintiffs' Amended Complaint.

### A.    Union Plaintiffs and AOEC Fail to Allege Informational Standing.

The Opposition clarifies that the union Plaintiffs[1] and Plaintiff Association of Occupational and Environment Clinics ("AOEC") only raise organizational standing through a theory of informational standing. *See* Opp'n at 20-27.[2] Their arguments, however, rest on mere speculation that they will never receive the information to which they claim they may be entitled. *See id.*

While Plaintiffs argue the Court should draw all reasonable inferences in its favor on a Rule 12(b)(1) motion, it is well-settled that a court need not accept as true inferences "unsupported by the facts set out in the complaint." *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (cleaned up). And here, judicially noticeable facts and allegations in Plaintiffs' Amended Complaint make such inferences improper.

The Workforce Executive Order directs the Department to implement its Agency Reduction in Force ("RIF") and Reorganization Plan (the "Plan") consistent with applicable law. Exec. Order No. 14210 § 3(c), 90 Fed. Reg. 9669, 9670 (Feb. 11, 2025). Accordingly, the

---

[1]    Plaintiffs define the union Plaintiffs as the National Nurses United; New York State Nurses Association; California Nurses Association/National Nurses Organizing Committee; American Federation of Teachers; United Mine Workers of America; United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial, and Service Workers International Union, AFL-CIO; International Association of Machinists and Aerospace Workers, AFL-CIO; National Federation of Federal Employees, IAM; International Union, United Automobile, Aerospace and Agricultural Implement Workers of America; and American Federation of Labor and Congress of Industrial Organizations. Pls.' Opp'n to Defs.' Mot. ("Opp'n") at 20 n.4, ECF No. 33.

[2]    All citations are to the ECF-generated page numbers.

Department has stated that it intends to proceed with its own Plan "without impacting critical services." *See HHS Announces Transformation to Make America Healthy Again (Mar. 27, 2025), Dep't of Health & Human Servs.,* https://www.hhs.gov/press-room/hhs-restructuring-doge.html ("March 27, 2025, Press Release"). Indeed, for example, as alleged by Plaintiffs themselves, the Institute offered to reopen the Health Hazard Evaluations requested by Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial, and Service Workers International Union, AFL-CIO ("USW"). *See* Am. Compl. ¶ 74, ECF No. 26.

Moreover, the Department's March 27, 2025, Press Release, clearly states that the RIFs and restructuring of the Institute are still ongoing. *See* March 27, 2025, Press Release (describing "specific contents of the restructuring plan that have been announced so far"); *Fact Sheet: HHS' Transformation to Make America Healthy Again,* Dep't of Health & Human Servs., https://www.hhs.gov/press-room/hhs-restructuring-doge-fact-sheet.html ("Fact Sheet") (noting that the Department "will continue to look for further ways to streamline its operations and agencies"). The ongoing and evolving nature of the Department's restructuring is evinced by the fact that after the March 27, 2025, Press Release, the Department rescinded RIF notices of more than three hundred Institute employees, determined that these employees should be returned to work, and provided these employees notices in mid-May 2025 that they would no longer be subject to the RIFs. Am. Compl. ¶ 39.

Secretary Kennedy's June 2025 testimony also makes clear that the restructuring is ongoing. *See* HHS Testimony on the President's Fiscal Year 2026 Budget (June 24, 2025), https://www.hhs.gov/about/agencies/asl/testimony/2025/06/24/the-presidents-fiscal-year-2026-budget.html ("Secretary Testimony") ("Over the next few months, we will work together with

Congress to restructure the Department and improve how we deliver services to the American people.").

In this light, while Plaintiffs may lament that they do not have access to the information they seek as of now, *see* Am. Compl. ¶¶ 69-80, they provide no basis for this Court to reasonably infer that they will never be able to obtain the information to which they say they are entitled in the future. Therefore, Plaintiffs provide no basis for this Court to oversee the Department's ongoing restructuring process. *See* Mot. at 27 (citing *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 891 (1990); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004)).

**B.    Plaintiff AOEC Fails to Allege Organizational or Associational Standing to Challenge the Termination of Any Grantmaking Functions.**

Plaintiff AOEC also fails to allege organizational or associational standing based on the alleged termination of any grantmaking functions.

First, Plaintiff AOEC fails to allege any non-speculative injury-in-fact to support its organizational standing. Plaintiff AOEC never alleges that it has been denied funding. *See* Am. Compl. ¶¶ 81-84. Rather, Plaintiff speculates that because NIOSH's Office of Extramural Coordination and Special Projects ("OECSP") has not yet taken actions to continue grant funding, it will ultimately not obtain its grant funding. *See id.* ¶ 66; Opp'n at 27-30. But Plaintiffs themselves alleged that the Institute "has informally indicated that it intends to continue funding OECSP-supported centers." Am. Compl. ¶ 66. And even so, Plaintiff AOEC's alleged harm assumes, without providing any allegations in support, that it would be awarded grant funding, should OECSP proceed with its grantmaking functions and AOEC were to compete for the funding. *See* Opp'n at 27-30.

In this light, Plaintiff's application of the standing requirements in *MISO Transmission Customers v. FERC*, 45 F.4th 1004, 1016 (D.C. Cir. 2022), is also misplaced. *See* Opp'n at 28. In

that case, the court found that Plaintiff had standing to challenge a Federal Energy Regulatory Commission ("FERC") cost-allocation regime based on its assertion that the regime had barred it from competing for FERC work in comparison to its competitors. *MISO Transmission*, 45 F.4th at 1016. But Plaintiff AOEC here does not allege that it has been barred in any way from competing for any grants, only that OECSP has not yet undertaken its grantmaking functions. *See* Am. Compl. ¶ 66. And as noted above, Plaintiff provides no non-speculative basis for this Court to infer that AOEC, or any other grant seeker, will be barred from competing for any grants in the future.

Additionally, Plaintiff AOEC fails to show that the alleged lack of grant-funding services "perceptibly impaired the organization's ability to provide services," *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015), or that it "used its resources to counteract that harm," *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017), both of which are required to satisfy organizational standing. *See id*. Plaintiff AOEC claims that the lack of grant services means it will lose its grant funding, which will lead to the closure of their summer internship program. *See* Opp'n at 27-28. But Plaintiff AOEC does not establish that the closure of one internship program will lead to the "inhibition of [the organization's] daily operations." *Env't Working Grp. v. United States Food & Drug Admin.*, 301 F. Supp. 3d 165, 171 (D.D.C. 2018) (quoting *Food & Water Watch, Inc.*, 808 F.3d at 919). Plaintiff AOEC does not claim or allege that its operations solely consist of the summer internship program, or that the program's closure would not enable it to otherwise continue operating. *See* Am. Compl. ¶¶ 81-82; Opp'n at 27-28. Nor does Plaintiff AOEC claim or allege that it had used its resources to counteract the harm it has suffered. *See id.*

Second, Plaintiff AOEC fails to show associational standing based on the purported termination of grantmaking services. As an initial matter, Plaintiff AOEC insists that it need not

name specific members to meet the bar for associational standing at this time. *See* Opp'n at 29. Plaintiff AOEC's citation to *Center for Biological Diversity v. Bernhardt*, 480 F. Supp. 3d 69, 74 (D.D.C. 2020), is not dispositive, however. In that matter, *id.*, the Government did not challenge standing, and the D.C. Circuit has specifically held, "When a petitioner claims associational standing, it is not enough to aver that unidentified members have been injured." *Chamber of Com. of U.S. v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011); *see also Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 815, 820 (D.C. Cir. 2006).

But even if identifying "member clinics" were enough at this stage, Plaintiff AOEC's members' standing still rests on speculation. Plaintiff AOEC argues that without OECSP continuing its grantmaking functions, those programs will be "deprived of resources formerly supported by NIOSH grants." Opp'n at 28. Plaintiff AOEC also claims that since those grants provide funding for recruitment and training for certain professions, its member clinics "will face injury in the form of a reduced pipeline of qualified workers." *Id.* at 28-29. But as noted above, Plaintiff AOEC only speculated that it will not receive the appropriate grant funding. And while Plaintiff suggests that OESCP provides the "primary source of funding for recruitment and training," it provides nothing other than bare-boned speculation that any such purported lack of future grant funding will automatically reduce the quality of future workers. *See* Opp'n at 29; Am. Compl. ¶¶ 83-84.

## C.    Plaintiffs Dentec and Local 983 Fail to Allege Standing.

Plaintiffs did not address Defendants' argument that both Dentec and Local 983 fail to allege any organizational standing. *See* Opp'n at 19-30; Mot. at 28. The Court should therefore find those points conceded. *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded."). Nor do Plaintiffs claim

that either Dentec or Local 983 have either informational standing or associational standing. *See* Opp'n at 19-30. Thus, the Court should dismiss Dentec and Local 983 from this action.

### D.    The Court Should Decline to Find Standing to Allow Plaintiffs to Micromanage Federal Personnel Policies.

Finally, contrary to Plaintiffs' characterization otherwise, Defendants presented jurisdictional arguments that Plaintiffs lack standing to bring claims broadly challenging agency policies and procedures. *See* Mot. at 28.

The standing issue Defendants raise is not merely about redressability, as Plaintiffs say. *See* Opp'n at 30-31. Defendant's citation in support of Plaintiffs' general lack of standing was the Supreme Court's decision in *United States v. Texas*, 599 U.S. 670, 677 (2023), in which the Court noted as a general matter, "a plaintiff lacks standing to bring such a suit" that "order[s] the Executive Branch to change its arrest or prosecution policies." *Id.* Likewise, in this case, the Department is engaged in the restructuring of the Institute with the goal of reducing wasteful spending, increasing efficiency, and increasing responsiveness to Americans' needs. *See* March 27, 2025, Press Release. Nonetheless, pursuant to the Executive Order, the Department's restructuring plan must be compliant with the law. Exec. Order No. 14210 § 3(c), 90 Fed. Reg. 9669, 9670 (Feb. 11, 2025). As a result, choices about how to restructure the Institute are policy decisions. Accordingly, the Supreme Court in *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 346 (2006), has held that plaintiffs lack standing to raise such challenges to policy decisions which will merely result in federal courts becoming "continuing monitors of the wisdom and soundness" of the Executive Branch's implementation of its statutory mandates. *Id.* (cleaned up).

In this light, it would be inappropriate for the Court to impart Plaintiffs standing to dictate policy decisions on behalf of the Department. Indeed, where Plaintiffs here at best have identified specific harms related to lack of access to specific Institute publications, research,

recommendations, programs, and Health Hazard Evaluations, *see* Am. Compl. ¶¶ 69-84, it would be contrary to this precedent for the Court to impart standing on Plaintiffs to seek an injunction that would go far beyond addressing those specific harms that they have identified in their Amended Complaint. *See Gill v. Whitford*, 585 U.S. 48, 73 (2018) ("We caution . . . that 'standing is not dispensed in gross': A plaintiff's remedy must be tailored to redress the plaintiff's particular injury."); *NTEU*, 149 F.4th at 781  ("Rather, a court may intervene only when a specific unlawful action harms the plaintiff, and only to the extent necessary to set aside that action.").

Moreover, Plaintiff's cites to *NTEU*, 149 F.4th at 776, and *New York v. Kennedy*, — F. Supp. 3d —, 2025 WL 1803260, at *8 (D.R.I. July 1, 2025), are not dispositive. *See* Opp'n at 30. While the Court in *NTEU*, 149 F.4th at 776-77, found that at least one of the Plaintiff's members could establish standing to obtain an injunction that would address her injuries, the Court ultimately did not evaluate the scope of any appropriate injunction for which she did have standing because it found a preliminary injunction was unwarranted. Moreover, the *New York* case is currently on appeal. *See New York v. Kennedy*, No. 25-1780 (1st Cir. 2025) (motion to stay preliminary injunction pending appeal denied).

## II.    The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims Arising from Federal Employment.

As an initial matter, Plaintiffs insist in their Opposition that they do not challenge the Department's RIFs. *See* Opp'n at 31. But that notion is hard to square with their allegations. They package their claims as challenging the shutdown of five divisions, the termination of the Institute's research functions, and the "cumulative shutdown" of the Institute as arbitrary and capricious or contrary to law. Am. Compl. ¶¶ 85-157. And in support of their claims that the Department is shutting down these departments and the Institute itself, they point to the Department's RIFs. Am. Compl. ¶¶ 38, 42, 44, 48.

Indeed, Plaintiffs specifically allege that the termination of the Institute's research functions and shutdown of the Institute was arbitrary and capricious because Defendants allegedly "plac[ed] a significant percentage of the NIOSH workforce on administrative leave after issuing RIF notices in disregard of the regulatory requirement that agencies conducting RIFs must, where possible, 'retain . . . employee[s] on active duty status' between the issuance of a RIF notice and the employees' eventual termination." *Id.* ¶¶ 149, 156. Plaintiffs further allege that Defendants acted contrary to law and arbitrarily and capriciously in allegedly shutting down the Institute "by executing a comprehensive set of RIFs and reorganizations that so degrade NIOSH's functionality as to render it incapable of performing its statutory functions." *Id.* ¶¶ 153, 155.

In these ways, the Amended Complaint belies Plaintiffs' attempts now in their Opposition to disown any challenge to the Department's RIFs. The plain language of their Amended Complaint demonstrates otherwise. And "[i]t is axiomatic, that a party may not amend his complaint through an opposition brief." *Singh v. District of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014) (internal quotations omitted); *Cohen v. Bd. of Trs. of Univ. of D.C.*, 311 F. Supp. 3d 242, 260 (D.D.C. 2018). Even so, none of Plaintiffs' arguments to avoid preclusion by the Civil Service Reform Act ("CSRA") are persuasive.

First, the very fact that neither Plaintiffs nor their members are in an employer-employee situation only bolsters the inappropriateness of their underlying challenge to the Department's RIFs. The principle in *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 347 (1984), applies here. Because Congress intentionally foreclosed judicial review by employees to bring their claims in federal district court, it would be illogical that non-employees with no personal stake in the employment relationship could bypass Congress's clear intention and bring suit on the very claims that the federal employees with a stake could not bring. *See Block*, 467 U.S. at 346-48; *c.f. NTEU*,

149 F.4th at 776 n.3 ("[I]f employees cannot end-run the CSRA's reticulated scheme of administrative and judicial review, then neither can organizations representing employees.").

Second, Plaintiffs' claims are not collateral to the challenge to the employment decisions made in the Department's RIFs. *See* Opp'n at 32. Plaintiffs' arguments ignore their own allegations in the Amended Complaint. Plaintiffs specifically ask this Court to "[d]eclare that Defendants' execution of a comprehensive set of RIFs and reorganizations that so degrade [the Institute's] functionality as to render it incapable of performing its statutory [duties] is unlawful and enjoin Defendants to reverse these actions." Am. Compl. at 42, Prayer for Relief. In *NTEU*, 149 F.4th at 775, the union Plaintiffs sought similar relief, which was to "obtain reinstatement for members already terminated and to prevent the CFPB from terminating other members in the future." And as a result, the Court held that, this kind of relief was "precisely the relief afforded through the CSRA." *Id.* The Court should reach the same conclusion here.

Moreover, that Plaintiffs may raise a systematic challenge to the Department's restructuring, of which the RIFs are a part, is of no moment. *See Nyunt v. Chairman, Broad. Bd. Of Govs.*, 589 F.3d 445, 449 (D.C. Cir. 2009) ("'Federal employees may not circumvent the [CSRA]'s requirements and limitations by resorting to the catchall APA to challenge agency employment actions.' That principle applies to a 'systemwide challenge' to an agency policy interpreting a statute just as it does to the implementation of such a policy in a particular case." (quoting *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009)); *Fornaro v. James*, 416 F.3d 63, 67–68 (D.C. Cir. 2005)); *Am. Foreign Serv. Ass'n v. Trump*, 768 F. Supp. 3d, 10-11 (D.D.C. 2025); *NTEU*, 149 F.4th at 775-76.

Third, the D.C. Circuit in *NTEU*, 149 F.4th at 776, held that claims that essentially "seek redress for allegedly unlawful terminations" are the "heartland of CSRA coverage" and entirely

within the expertise of the MSPB or the FLRA. Plaintiffs may argue these agencies do not have expertise about their claims related to the alleged shutdown of the Institute and its departments. *See* Opp'n at 32. But in *NTEU*, 149 F.4th at 776, the court found that repackaging claims cannot overcome CSRA preclusion, even when raising constitutional claims arguably within the federal district court's wheelhouse, in light of the CSRA's clear expertise on employment matters. Here, Plaintiffs do not even raise constitutional claims. The Court should find that Plaintiffs' challenges to any of the Department's RIFs are precluded by the CSRA.

### III.   The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Challenge to the Termination or Non-Continuation of the Institute's Grants.

Plaintiffs do not argue that *Dep't of Educ. v. California*, 145 S. Ct. 966, 967 (2025) would be otherwise inapplicable should they challenge the termination or non-continuation of grants. *See* Opp'n at 35. Rather, they solely argue that they do not raise any claims challenging the termination or non-continuation of any grants. *See id.*

Plaintiffs' Amended Complaint belies that assertion. Plaintiff AOEC is the only plaintiff to have allegedly suffered harm from the status of OESCP's grantmaking functions. *See* Opp'n at 27-30; Am. Compl. ¶¶ 81-84. Plaintiff AOEC makes clear that it brings this case because it anticipates that it and its members will eventually lose grant funding from OESCP to run certain operations given the status of OESCP's grantmaking functions. *See* Am. Compl. ¶¶ 81-82; Opp'n at 27-30. Plaintiff AOEC also clarifies that it brings this case because the current lack of grantmaking functions will affect the academic training programs that the Institute supports, which will in turn allegedly harm its members. *See* Am. Compl. ¶¶ 83-84; Opp'n at 27-30.

Accordingly, for Plaintiffs to now assert they do not seek to reinstate or continue current grants is puzzling: The only Plaintiff with standing to challenge the status of OESCP's grantmaking functions seeks to redress the purported harm from the alleged lack of impending

grant funding for itself and its members. Thus, the Court should find that Plaintiffs' challenges to any purported terminations of grants is precluded by the Tucker Act.

## IV.    Plaintiffs Cannot Bring a Claim under the Impoundment Control Act.

Plaintiffs concede they cannot bring any claim under the Impoundment Control Act. *See* Opp'n at 17 n.3, 43 n.7, 46 n.8. The Court should thus dismiss Counts II, XI, and XIV, which are premised on the Impoundment Control Act. *See* Am. Compl. ¶¶ 89-94, 127-33, 140-46.

## V.    Plaintiffs Fail to Sufficiently Allege Claims Under the APA.

Plaintiffs still fail to allege any claims under the APA. They do not seek judicial review of a discrete final agency action; there are adequate alternative remedies under the CSRA and Tucker Act; the Department's actions are committed to agency discretion; and the ongoing RIFs and organizational restructuring are not contrary to law.

### A.    Plaintiffs Do Not Seek Judicial Review of a Discrete Agency Action.

Plaintiffs' Opposition only further highlights their failure to identify any discrete agency action for this Court's review. Indeed, Plaintiffs' Opposition oscillates on what discrete agency action Plaintiffs purportedly challenge. In some places, it claims they challenge the "reorganization plan, as well as individual components of the plan." *See* Opp'n at 10; *id.* at 40. In others, it insists "they challenge the wholesale dismantlement of entire NIOSH divisions that perform essential, statutorily mandated work that has not been transferred elsewhere." *See id.* at 44. And in yet another place, the Opposition defines the purported challenged agency action as including "the consequent termination of the statutory functions that those offices once performed." *See id.* at 11. Plaintiffs' continually morphing definition of the agency action they purportedly challenge underscores their failure to identify any discrete agency action for this Court's review.

Nonetheless, what is relevant at this stage is the Amended Complaint. *See Singh*, 55 F. Supp. 3d at 70 ("it is axiomatic that a Plaintiff cannot amend their Complaint through an opposition

- 12 -

to a motion to dismiss." (internal quotations omitted)). And here, the Amended Complaint breaks out seventeen claims, challenging the alleged shutdown of five divisions at the Institute, the alleged termination of the Institute's research functions, and the alleged cumulative shutdown of the Institute. Am. Compl. ¶¶ 85-157.

But the Amended Complaint does not point to any formal pronouncement to shut down or terminate any of those divisions or the Institute's functions. The reorganization plan as articulated in the March 27, 2025, Press Release previews the "[c]reation of the Administration for a Healthy America (AHA), which will combine multiple agencies — the Office of the Assistant Secretary for Health (OASH), Health Resources and Services Administration (HRSA), Substance Abuse and Mental Health Services Administration (SAMHSA), Agency for Toxic Substances and Disease Registry (ATSDR), and National Institute for Occupational Safety and Health (NIOSH) — into a new, unified entity." *See* Fact Sheet.

As a result, Plaintiffs' only basis for their allegations that these divisions or research functions have been shut down is by pointing to a collection of actions at the Institute – the purported lack of current services at the Institute (such as the delayed publication of research and cessation of grantmaking functions), the ongoing restructuring plans, and the RIFs, among other things. *See* Am. Compl. ¶¶ 30-66. But this pleading strategy is the exact kind of "bundling together a collection of discrete actions, presenting them as facets of a single event, and then challenging that event instead of the individual actions" that the Court has already found to be improper for APA review. *See AEFP*, 2025 WL 1568301, at *5.

In this light, Plaintiffs' attempts to distinguish *NTEU*, 149 F.4th at 780-85, and *AEFP*, 2025 WL 1568301, at *1, fall flat.

First, Plaintiffs mischaracterize Defendants' arguments by claiming that Defendants concede that Plaintiffs are challenging a host of different actions. *See* Opp'n at 39. Rather, Defendants have argued by the very fact that Plaintiffs point to a host of different actions to support their claims challenging the alleged shutdown of the divisions, the alleged termination of the research functions, and alleged cumulative shutdown of the Institute, they fall under the purview of *NTEU* and *AEFP*'s prohibition against "bundling together a collection of discrete actions" to challenge one event. *See* Mot. at 42-46.

Second, Plaintiffs cannot avoid *NTEU* and *AEFP* by arguing that they challenge the "Agency RIF and Reorganization Plan." *See* Opp'n at 36. That is simply not what is articulated in the Amended Complaint as the challenged agency actions. *See* Am. Compl. ¶¶ 85-88, 95-126, 134-39, 147-157 (identifying "Shutdown of Mining Research Divisions," "Shutdown of DSI," "Shutdown of DFSE branches," "Shutdown of HELD," "Shutdown of OECSP," "Termination of NIOSH's research functions," and "Cumulative shutdown of NIOSH" as the actions contrary to law and arbitrary and capricious). And even so, Plaintiffs do not allege in their Amended Complaint that the "Agency RIF and Reorganization Plan" makes any formal pronouncement to shut down these divisions or functions. *See* Am. Compl. ¶¶ 30-66.

Third, the relief that Plaintiffs seek would require this Court to "monitor the agency's day-to-day statutory compliance" in contravention to *NTEU* and *AEFP*. *See AEFP*, 2025 WL 1568301, at *1; *see also NTEU*, 149 F.4th at 780-81. In their Prayer for Relief, Plaintiffs seek to order the Defendants to "restore" five of the Institute's divisions and their functions, restore NIOSH's functions, and reverse the Department's RIFs and reorganizations as it relates to NIOSH. *See* Am. Compl. at 41-42, Prayer for Relief. Plaintiffs' claims that the Court would only need to reverse those actions and no longer have any role is unrealistic. *See* Opp'n at 39. The Court's role would

not be done after reversing the Department's actions taken so far. Rather, should the Court grant the relief that Plaintiffs seek, it would have to continually monitor whether Defendants have sufficiently "restore[d] those functions." *See* Am. Compl. at 41-42, Prayer for Relief.

Fourth, Plaintiffs inaccurately characterize the Court's findings in *NTEU* and *AEFP* as noting mere evidentiary shortcomings. *See* Opp'n at 39-40. The Court in *AEFP* was concerned that the organizational plaintiff in that case had not demonstrated that there was any single decision to cancel contracts "en masse," but was rather "improperly bundling together a series of actions for wholesale correction rather than challenging one 'circumscribed [and] discrete' action." *AEFP*, 2025 WL 1568301, at **6-7. Likewise, in *NTEU*, 149 F.4th at 783-85, the D.C. Circuit found that Plaintiff could point to no such decision to shut down the agency and any such inference of a shutdown was simply gleaned by "referring to a constellation of then-ongoing actions." Neither case was concerned with the lack of evidence, but rather with Plaintiffs' general litigation strategy to extrapolate an agency decision from a collection of other actions. As explained above, Plaintiffs' allegations, accepted as true, at this stage, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), demonstrate the same such strategy. As a result, the Court should rule here as it did in *AEFP* and as the D.C. Circuit has ruled in *NTEU*, and find that Plaintiffs have failed to identify any discrete agency action for this Court's review under the APA.

## B.    Plaintiffs Do Not Identify a Final Agency Action.

Even assuming Plaintiffs have identified some discrete agency action for this Court's review, Plaintiffs nonetheless fail to demonstrate a final agency action.

Plaintiffs claim that Defendants have failed to point to anything in their Amended Complaint to demonstrate lack of finality. *See* Opp'n at 41. But Defendants pointed to the March 27, 2025, Press Release, *see* Mot. at 47, which is a fact of which this Court can take judicial notice, *see, e.g., Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016) (citing *Pharm. Rsch.*

& *Mfrs. of Am. v. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies.")), and is incorporated by reference in Plaintiffs' Amended Complaint, *see* Am. Compl. ¶ 33. And that March 27, 2025, Press Release shows that the restructuring plan is ongoing. *See* March 27, 2025, Press Release (noting "specific contents of the restructuring plan that have been announced so far."); Fact Sheet (noting Department "will continue to look for further ways to streamline its operations and agencies."). Defendants further pointed to the facts of which this Court can take judicial notice – the Workforce Executive Order and Workforce Memorandum, which provide guidance with respect to the Department's restructuring efforts and identify September 30, 2025, as a target implementation date. *See* Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025); Off. of Personnel Mgm't, *Memorandum re: Guidance on Agency RIF & Reorganization Plans Requested by* Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative, https://www.opm.gov/chcoc/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf. And Plaintiff's recitation of the history of the RIFs and later rescission of those RIFs at the Institute only highlights the ongoing nature of the Department's reorganization at the Institute since the March 27, 2025, Press Release. *See* Am. Compl. ¶¶ 34-39.

Additionally, Secretary Kennedy's June 2025 testimony also makes clear that the restructuring is ongoing. *See* HHS Testimony on the President's Fiscal Year 2026 Budget (June 24, 2025), https://www.hhs.gov/about/agencies/asl/testimony/2025/06/24/the-presidents-fiscal-year-2026-budget.html ("Over the next few months, we will work together with Congress to restructure the Department and improve how we deliver services to the American people.").

Taking these facts and allegations together, there is no basis to infer that the Department's reorganization and restructuring is final.

Indeed, Plaintiffs' attempts to differentiate *NTEU* is unpersuasive. As in that case and in *AEFP*, Plaintiffs merely challenge "an agency plan" that "reflects only a nonbinding statement of something the agency intends to do in the future." *NTEU*, 149 F.4th at 779; *see also AEFP*, 2025 WL 1568301, at *6 ("To the extent that unilateral dismantlement (or large-scale reorganization) is underway, it is not challengeable as a final agency action[.]").

And given the ongoing nature of the Department's restructuring of the Institute, Plaintiffs have failed to allege that they have directly suffered harm to any rights or determination of obligations which result in their having standing to sue. *See NTEU*, 149 F.4th at 779 ("Because such a plan has no immediate effect, a plaintiff cannot challenge the plan itself but instead must await further agency actions implementing it.").

### C.    There Are Adequate Alternative Remedies Available.

Plaintiffs argue that since they do not challenge the RIFs or any termination of grants, they lack adequate alternative remedies. *See* Opp'n at 42. But as explained above, Plaintiffs' arguments are hard to square with allegations in the Amended Complaint. *See supra* §§ II, III.  And because the Amended Complaint does appear to raise challenges to both the RIFs and the alleged impending termination of grants, there are other adequate alternative remedies via the CSRA and the Tucker Act. *See supra* §§ II, III. Moreover, the Tucker Act's preclusion is not avoided simply because the Court of Federal Claims could not provide the relief that Plaintiff seeks. *See Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80 (D.C. Cir. 1985) ("To hold that the CDA does not apply merely because, under that scheme, plaintiff cannot receive all its requested remedies, would intolerably upset the congressional purpose underlying the Act.").

D.    **The Department's Staffing and Other Programmatic Implementation Decisions Are Committed to Agency Discretion.**

As an initial matter, Plaintiffs appear to misunderstand their own burdens in bringing a complaint. Plaintiffs assert that Defendants improperly flip the burden on them to demonstrate how the Department's actions were arbitrary, capricious, or contrary to law. *See* Opp'n at 43. But it is Plaintiffs' burden at the pleading stage to allege "sufficient facts" accepted as true that "state[s] a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678. As a result, it is not improper for Defendants to argue that Plaintiffs must show they have alleged with sufficient particularity how their actions are subject to this Court's review under the APA.

And Plaintiffs here fail to meet that burden. The Workforce Executive Order requires the Department to institute its restructuring consistent with applicable law. Exec. Order No. 14210 § 3(c), 90 Fed. Reg. 9669, 9670 (Feb. 11, 2025). The Workforce Memorandum provides the following instructions to agencies: "Pursuant to the President's direction, agencies should focus on the maximum elimination of functions that are not statutorily mandated while driving the highest-quality, most efficient delivery of their statutorily required functions." Off. of Personnel Mgm't, *Memorandum re: Guidance on Agency RIF & Reorganization Plans Requested by* Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative at 2, https://www.opm.gov/policy-data-oversight/latestmemos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-thepresident-s-department-of-government-efficiency-workforce-optimization-initiative.pdf. And Plaintiffs' Amended Complaint, at best, amounts to a handful of particularized allegations of some delay or disruption in government services as a result of the Department's ongoing restructuring and reorganization of the Institute pursuant to the Workforce Executive Order. *See* Am. Compl. ¶¶ 30-66; *see supra* §§ I, V.B.

But decisions about how the Department implements its statutorily mandated functions, particularly as they are done by RIFs or reorganization, are entirely within the agency's discretion. *See AEFP*, 2025 WL 1568301, at \*8 ("It is not the place of this Court to substitute its own judgment for that of the agency on staffing issues."); *id.* at \*6 (noting that "a unilateral dismantlement (or large-scale reorganization)" "cannot be laid before the courts for wholesale correction under the APA." (cleaned up)); *Markland v. OPM*, 140 F.3d 1031, 1033 (Fed. Cir. 1998) ("We accord an agency wide discretion in conducting a reduction in force; absent a clear abuse of that discretion, a substantial departure from applicable procedures, a misconstruction of governing statutes, or the like, we do not upset a final agency decision.") (cleaned up). In this light, contrary to Plaintiffs' assertions otherwise, *see* Opp'n at 43, there are no factual issues to resolve with an administrative record, and there is no basis for vacatur or injunctive relief here, where Plaintiffs' claims challenging actions within agency discretion fail as a matter of law.

Additionally, as to the relief available, Defendants note that in APA cases, "[t]he district court ha[s] no jurisdiction to order specific relief." *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005). "Unlike a district court managing a garden variety civil suit, a district court reviewing a final agency action does not perform its normal role but instead sits as an appellate tribunal." *Id.* Accordingly, "when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the correct legal standards." *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995).

### E.    Plaintiffs Fail to Allege that the RIFs and Restructuring are Contrary to Law and Exceed Defendants' Statutory Authority.

As an initial matter, Plaintiffs do not contest that many of their allegations focus on functions that are not actually required by statute. *See* Opp'n at 45-46. To the extent that Plaintiffs

claim that they have sufficiently alleged that the Department has made some final discrete decision to stop performing certain other statutorily mandated functions, Plaintiffs have failed to sufficiently allege as much as explained above. *See supra* §§ V.A-B.

## CONCLUSION

For these reasons and those stated in the Motion, Plaintiffs' Amended Complaint should be dismissed.

Dated: October 1, 2025                    Respectfully submitted,

                                          JEANINE FERRIS PIRRO
                                          United States Attorney


                                          By:        */s/ Erika Oblea*
                                          _____
                                               ERIKA OBLEA, D.C. Bar #1034393
                                               Assistant United States Attorney
                                               601 D Street, NW
                                               Washington, DC 20530
                                               (202) 252-2567
                                               Erika.Oblea@usdoj.gov

                                          *Attorneys for the United States of America*